**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT LEE DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:23-cv-751-CWB** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      Introduction and Administrative Proceedings**

Robert Lee Davis ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on December 14, 2020—alleging disability onset as of December 14, 2020 due to hypertension, asthma, chronic obstructive pulmonary disease, and sleep apnea.  (Tr. 17, 74, 81).[1]  The claim was denied at the initial level on February 14, 2022 and again after reconsideration on July 12, 2022.  (Tr. 17, 80, 87-89, 95-96, 102-05).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 17, 130-34).  The ALJ subsequently heard the case on March 8, 2023 (Tr. 17, 34-73), at which time testimony was given by Plaintiff (Tr. 39-66, 70) and by a vocational expert (Tr. 63-70).  The ALJ took the matter under advisement and issued a written decision on May 25, 2023 that found Plaintiff not disabled. (Tr. 17-29).

---

[1]  References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since December 14, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertension, asthma, chronic obstructive pulmonary disease (COPD), sleep apnea, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally push and pull with the bilateral upper and lower extremities. He can occasionally crouch. He can never climb ladders, ropes, and scaffolds. He can frequently engage in reaching, handling, fingering, and feeling. He should avoid concentrated exposure to extreme heat and humidity. He should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gas. He should avoid all exposure to hazardous conditions such as unprotected heights, dangerous machinery, and uneven surfaces. He would be restricted to jobs with no more than simple, short instructions and simple work-related decisions with few workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 1, 1975, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 14, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20, 21, 22, 27, 28, 29).  On October 25, 2023, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and remand the case for a new hearing and further consideration.  (Doc. 11 at p. 10).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge (Docs. 6 & 7), and the court finds the case ripe for review pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) in that the court construes Plaintiff's supporting brief (Doc. 11) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 12) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a contrary result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]  To make such a determination, the ALJ employs a five-step sequential evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* 20 C.F.R. §§ 404.1520 & 416.920.[3]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience

---

[3] *McDaniel* was an SSI case brought under Title XVI. Nonetheless, because the same sequence applies to claims for disability insurance benefits brought under Title II, cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

**III.   Issues on Appeal**

Plaintiff raises one issue on appeal:  whether the ALJ erred in failing to order a consultative examination, including pulmonary function testing.  (Doc. 11 at p. 2).

**IV.   Discussion**

Plaintiff asserts that the ALJ erred in failing to order a consultative medical examination when the medical record pertaining to his respiratory impairments was inadequate to properly determine the nature and extent of his physical limitations—exertional and non-exertional—and their impact on his RFC.  (Doc. 11 at p. 9).  Plaintiff more specifically asserts that the medical evidence did not include pulmonary function testing ("PFT") and that the ALJ therefore did not have sufficient evidence to determine whether his respiratory impairments met or medically equaled the respiratory listings at 3.02 or 3.03 or to evaluate adequately his respiratory impairments.  (*Id*.).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your

limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at \*8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at \*2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)

("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

"Social Security proceedings are inquisitorial rather than adversarial," and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham*, 129 F.3d at 1422.[4]  "This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, assist the Claimant in obtaining evidence from his or her treating sources, and order a consultative examination when such an examination is necessary to make an informed decision." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052 at *2 (M.D. Fla. Jan. 28, 2021); 20 C.F.R. §§ 404.1512(b)(1)-(2), 416.912(b)(1)-(2).

The ALJ's obligation to develop the record "exists even if the claimant is represented by counsel or has waived the right to representation."  *Cowart v. Schweiker*, 662 F.2d 731, 735

---

[4] "The basic duty to develop the record rises to a 'special duty' where the claimant has not waived his or her right to representation and is not represented during the administrative proceedings." *Rivera Perez v. Comm'r of Soc. Sec.*, No. 6:20-CV-79, 2021 WL 289052 at *2 n.3 (M.D. Fla. Jan. 28, 2021) (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)) (emphasis added). Because Plaintiff was represented by counsel at the hearing (Tr. 34-74), the ALJ had only a basic duty to develop the record.

(11th Cir. 1981) (citations omitted).  However, "[t]here must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record." *Rodriguez-Torres v. Saul*, No. 8:18-CV-1982, 2019 WL 4267955 at *4 (M.D. Fla. Sept. 10, 2019), *aff'd sub nom. Torres v. Comm'r of Soc. Sec.*, 819 F. App'x 886 (11th Cir. 2020). "At a minimum, clear prejudice 'requires a showing that the ALJ did not have all of the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Rivera Perez*, 2021 WL 289052 at *3 (quoting *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134 at *2 (11th Cir. June 1, 2022).

With respect to the matter now at issue, the "[o]rdering [of] a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (citation omitted); 20 C.F.R §§ 404.1519a(b), 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). An ALJ thus "is not required to order a consultative examination as long as the record contains sufficient evidence upon which the ALJ can make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("The ALJ 'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'") (citation omitted).

Here, the evidence before the ALJ was sufficient to assess Plaintiff's RFC.  In addition to Plaintiff's testimony (Tr. 23), the ALJ considered Plaintiff's hospital treatment records that showed the following:

[O]n November 30, 2020, the claimant presented to the emergency room (ER) and was admitted due to constant shortness of breath, aggravated by movement (1F). He tried using his albuterol inhaler but had minimal relief. He also had some wheezing and fatigue. His blood pressure on presentation was 223/118 and he had no signs of end organ damage. He had a chest x-ray showing no acute abnormality. He was discharged on December 5, 2020, with diagnoses of a COPD exacerbation, uncontrolled HTN, possible NSTEMI, and hyperlipidemia. He was also placed on a BiPAP at night.

On August 8, 2021, the claimant presented to the ER with complaints of a cough (2F/47). **The claimant had a chest x-ray that showed no acute pulmonary disease** (2F/35). **His respiratory exam was within normal limits,** and he had no neurological deficits (2F/36). His active problems were noted to be asthma, HTN, and obstructive sleep apnea (2F/38). His blood pressure measured 181/94 (p. 49). He was assessed with a COPD exacerbation (2F/50).

On September 19, 2021, the claimant presented to the ER with complaints of back pain for a week. He was recently diagnosed with HTN, and his blood pressure was 224/100 in triage. He has been without his HTN medication because he was unable to get and [sic] appointment with his primary care provider (2F/23). On exam, he had moderate tenderness of the back. He had no musculoskeletal abnormalities with a normal range of motion. There were no focal neurological deficits observed, normal sensory observed, normal motor observed, and normal coordination observed. He was also noted to be cooperative, with an appropriate mood, affect, and judgement (2F/26). The claimant had chest-x-rays showing no active disease (2F/9). The claimant tested positive for amphetamines, cannabis, cocaine, and opiates (2F/22). He was diagnosed with HTN crisis and back pain.

On January 13, 2022, the claimant presented to the ER after falling yesterday over a curb and reported low back pain. He stated he has chronic COPD and asthma and is having a cough (3F/17). On exam, the claimant's blood pressure measured 227/114 and he had been out of his medications (3F/19). **His lungs were clear to auscultation with no deficits noted** (3F/20). He had no neurological deficits. He had a normal range of the back and was ambulating well. He had an appropriate mood and affect (3F/20). Lumbar spine x-rays showed no fracture or malalignment of the lumbar spine, and his **chest x-ray showed no acute cardiopulmonary disease** (3F/20). The claimant was diagnosed with acute low back pain, musculoskeletal pain, chronic GERD, and uncontrolled HTN secondary to medication non-compliance (3F/21).

On April 27, 2022, the claimant presented to the ER with complaints of chest pain. Based on his historical features and/or lab analysis and/or EKG, in addition to his reassuring physical exam, **the physician found no evidence at the time for a malignant etiology for his chest pain** (4F/23). He was assessed with asthma, cough, and uncontrolled HTN secondary to medication noncompliance (4F/26).

On July 10, 2022, the claimant was admitted to the hospital with complaints of chest pain, and he was discharged on July 15, 2022. He also reported having shortness of breath (6F/14). He was noted to be morbidly obese with a history of non-compliance to medical treatment, hypertensive crisis, polysubstance abuse, COPD, and hyperlipidemia. He was found to have a blood pressure in the 220's over the 110's. He was put on multiple medications for his blood pressure. The last medication tried was Imdur and it seemed to work relatively well. He continued to ask for pain medications. At this point he was ready for discharge. There was also an echocardiogram showing an EF greater than 70% with hypertrophic cardiomyopathy (6F/52). On an earlier exam, his lungs were clear to auscultation, respirations were non labored, and breath sounds were equal. He was alert and oriented to person, place, time, and situation. He had no focal neurological deficits noted and he had normal coordination. He was cooperative, and he had an appropriate mood and affect with normal judgement (6F/16). **His chest x-ray showed clear lungs and a normal heart size** (6F/18). His troponin was negative (6F/23). His EKG noted no sign of ST-T wave changes (6F/32). **His physical exam adduced essentially negative findings.** He was also cooperative with an appropriate mood and affect. He was diagnosed with HTN and atypical chest pain (6F/21).

On August 1, 2022, the claimant presented to the ER with complaints of back pain with urination for a week. He reported no radiating pain. The degree at onset was minimal and the degree at present is minimal (6F/6). His frequency of drug use was noted as weekly and he was abusing marijuana (6F/8). On exam, he was alert. **His lungs were clear to auscultation, respirations were non-labored, and breath sounds were equal.** He had no tenderness of the back (6F/8). He had normal ranges of motion and normal strength (6F/9). He had no neurological deficits. He was cooperative with an appropriate mood and affect (6F/9). He had a lumbar spine x-ray that was negative (6F/13). He was assessed with acute back pain, polysubstance use/abuse, and HTN (6F/11).

On August 12, 2022, the claimant reported to the office for a hospital follow up visit after being seen in the emergency room with complaints of back pain (5F). The claimant stated he had an x-ray that was negative. He continues to have back pain on and off. On exam, he had tenderness with deep palpation to the right flank. He was assessed with flank pain. He was given information with education regarding exercises to help alleviate musculoskeletal pain. Also, there were no complaints noted of medication side effects. On September 9, 2022, the claimant presented with a history of painful urination, left flank pain. His CT of the abdomen/pelvis showed no urinary calculus or suspicious urinary lesion (6F/4).

(Tr. 23-25) (emphasis added).

After the March 8, 2023 hearing, the ALJ sent Plaintiff to an internal medicine consultative examination. (Tr. 17, 25-26, 931-40). The ALJ stated that on April 16, 2023, Dr. Oluyinka Adediji conducted the consultative examination and that Plaintiff presented with complaints of shortness of breath, asthma, COPD, hypertension, and sleep apnea. (Tr. 25, 932). The examination showed that respirations were normal with no intercostal refractions or use of accessory muscles apparent, that breath sounds were normal to auscultation with some explanatory wheezing, and that there were no rales, rhonchi, stridor, or rubs. (Tr. 933). The ALJ noted that Dr. Adediji assessed Plaintiff "with dyspnea on exertion: asthma/COPD, HTN, obstructive sleep apnea, and low back pain-discogenic" and "physically expected [him] to tolerate a sedentary workload." (Tr. 26, 934). In addition, the ALJ considered the prior administrative findings, which concluded that Plaintiff had an RFC consistent with a medium exertional level. (Tr. 26-27, 77-79, 84-86, 95).

The record reflects that the ALJ had sufficient evidence to assess Plaintiff's RFC, *i.e.*, the medical treatment records, the prior administrative findings, and the consultative examination and opinion of Dr. Adediji. Plaintiff has failed to show that the record contains any evidentiary gaps that resulted in unfairness or clear prejudice requiring an additional consultative examination and opinion. As stated above, the ALJ—and not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945. Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle*, 557 F. App'x at 853-54; *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal

quotation marks omitted).

The record here supports the RFC determination, and an additional medical opinion was not necessary. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) ("The administrative law judge was not required to order an additional medical examination to develop a full and fair record. ... Sarria fails to identify any gaps in the evidence. Sarria was represented during the administrative process and was responsible for producing evidence related to her disability. ... Sarria's medical records, the reports of her treating psychiatrists and therapists, the assessments of agency physicians, and Sarria's self-assessments provided sufficient evidence for the administrative law judge to determine whether Sarria's depression was disabling. ... Sarria's disagreement with the interpretation of that evidence does not warrant a remand of her case.") (citations omitted). Moreover, "[m]ere speculation that an additional examination might have changed the results is not sufficient to show prejudice." *Boisvert v. Comm'r of Soc. Sec.*, No. 2:21-CV-35, 2022 WL 4093065 at *6 (M.D. Fla. Sept. 7, 2022); *see Schrimpsher v. Kijikazi*, No. 4:21-CV-472, 2022 WL 16924102 at *3 (N.D. Ala. Nov. 14, 2022) ("[Plaintiff] hasn't pointed to any evidentiary gaps in the record, and he was represented during the administrative process, so he had a duty to produce evidence related to his disability. Plus, [Plaintiff] can only speculate that a consultative exam ... would provide evidence that supported his claim of disability. Speculation isn't a basis for an ALJ to order a consultative exam.") (internal citation omitted); *Kever v. O'Malley*, No. 2:23-CV-626, 2024 WL 2239738 at *3 (M.D. Ala. May 17, 2024) ("It is [the plaintiff's] burden to show that she is disabled, and her mere speculation that a consultative examination would have shown that she is more limited than her RFC is not sufficient to remand her disability application to the Commissioner."); *Davis v. Soc. Sec. Admin., Comm'r*, No. 4:20-CV-000346, 2021 WL 3887467 at *6 (N.D. Ala. Aug. 31, 2021) ("Hope or speculation is not a

basis for ordering a consultative examination.").  Plaintiff therefore has failed to show he was prejudiced by the absence of an additional consultative examination.  *See Slocumb v. Comm'r of Soc. Sec.*, No. 5:16-CV-617, 2017 WL 2889804 at *4 (M.D. Fla. May 15, 2017) ("[T]he only purported prejudice that Plaintiff points to in her brief is the lack of a consultative psychological examination ... but it is Plaintiff's duty to show *how* the ALJ's failure to obtain a psychological examination prejudiced her, the mere lack of a consultative examination is inadequate to meet Plaintiff's burden when the record contains sufficient evidence to determine whether she is disabled.") (emphasis in original); *Gentle v. Kijakazi*, No. 8:21-CV-2900, 2023 WL 2446609 at *4 (M.D. Fla. Mar. 10, 2023) ("[T]he mere lack of a consultative examination is inadequate to meet a plaintiff's burden to demonstrate prejudice. ...  Rather, a plaintiff must show the ALJ's decision would have been impacted by a consultative examination.") (citing *Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) and *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010)).

For these same reasons, Plaintiff's perfunctory argument that the ALJ was required to obtain pulmonary function testing to determine whether his impairments met or medically equaled Listings 3.02 or 3.03 (Doc. 11 at p. 9) also fails.  First, Plaintiff provides no discussion as to how the ALJ's conclusion that he did not meet the requirements for any listing would have changed had the ALJ ordered a PFT.  Accordingly, Plaintiff has essentially waived the argument.  *Felipa v. Comm'r of Soc. Sec.*, No. 6:18-CV-1519, 2019 WL 6465023 at *3 (M.D. Fla. Dec. 2, 2019) (citing *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (stating that plaintiff's perfunctory argument was arguably abandoned).

Second, even if Plaintiff did challenge the ALJ's finding that his impairments did not meet or medically equal Listings 3.02 or 3.03, Plaintiff failed to show that the ALJ was required

to obtain further evidence related to the criteria of either Listing. *Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R. §§ 404.1525(a)-(d), 416.925(a)-(d); 20 C.F.R. §§ 404.1526(a), 416.926(a).

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. The duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909.

In finding that Plaintiff did not meet Listing 3.02 or 3.03, the ALJ stated the following:

No treating or examining physician or psychologist has concluded the claimant has an impairment of combination of impairments that meets or equals the requirements of any medical listing. Additionally, I have considered the claimant's impairments under the appropriate listings and found they do not meet or equal the requirements of any medical listing.

The claimant's COPD fails to meet or medically equal Section 3.02 of the Listing of Impairments because the record evidence does not establish the existence of COPD with an $FEV_1$ or FVC less than or equal to the values specified for the claimant's age, gender, and height without shoes. The record further fails to establish that the claimant had a chronic impairment of gas exchange demonstrated by any of the enumerated respiratory measurements or any exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart.

The claimant's asthma fails to meet or medically equal Section 3.03 of the Listing of Impairments because the record evidence does not establish the existence of chronic asthma with an $FEV_1$ less than or equal to the values specified for the claimant's age, gender, and height without shoes measured within the same 12-month period as the hospitalizations. The record further fails to establish that the claimant experiences asthma exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart lasting at least 48 hours.

(Tr. 21).[5]

There is simply no discussion by Plaintiff as to how the ALJ's conclusion that he did not meet the requirements for the listings at issue would have changed had the ALJ ordered a PFT. Treatment records consistently showed that Plaintiff had no acute pulmonary disease, that Plaintiff's respiratory examinations were within normal limits, and that Plaintiff's lungs were clear to auscultation with no deficits noted.  (Tr. 535-36, 575, 883, 893, 933).  The ALJ's opinion shows that the ALJ considered the medical evidence regarding COPD, found COPD to be a severe impairment, and accounted for the limitations imposed by COPD by limiting Plaintiff to avoiding concentrated exposure to extreme heat and humidity and to avoiding concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gas.  (Tr. 22).  The ALJ advised Plaintiff that Dr. Adediji's consultative examination was being included into the record and that Plaintiff had the right to submit any written comments concerning the evidence, a written statement as to the

---

[5]  "$FEV_1$ means forced expiratory volume in the first second of a forced expiratory maneuver," and "FVC means forced vital capacity."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 3.00B10-11.

facts and law he believed applied to the case in light of that evidence, and written questions for the author of the new evidence, along with the right to request a supplemental hearing. (Tr. 71-72, 341-42).   In response, Plaintiff stated that Dr. Adediji's examination report and medical statement provided substantial support for his alleged impairments and inability to work, and he did not object to the lack of a PFT.  (Tr. 344).  Plaintiff now speculates that a PFT would have resulted in objective medical findings, *i.e.*, the requisite $FEV_1$ or FVC values on testing. However, Plaintiff has not cited any evidence that a medical professional ordered or recommended obtaining a PFT.  Under such circumstances, and in light of the record as a whole, the mere lack of a PFT does not amount to an evidentiary gap and reflects no unfairness or clear prejudice.  *See Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 843 (11th Cir. 2019) ("[B]ecause the record was sufficient for the ALJ to determine whether [plaintiff's] liver impairments 'met' Listing 5.05B and F, the ALJ was under no obligation to order a consultative examination or obtain expert medical testimony."); *Felipa*, 2019 WL 6465023 at *3.

## V.      Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 11) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 12) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 15th day of July 2024.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**